In the Matter of MICHAEL J. WALSH, an Attorney.

First Department, April 13, 1917.

Attorney at law disbarred — conversion of client's money received for special purpose.

Attorney at law to whom his client had intrusted moneys to be expended for the printing of papers on a contemplated appeal disbarred for converting said moneys to his own use and refusing to account therefor after he had discovered, by reviewing the evidence at trial, that there was no ground whatever for an appeal.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Rufus W. Sprague, Jr.,* of counsel [*Einar Chrystie,* attorney], for the petitioner.

*Mathew W. Wood* of counsel [*Arthur H. Parkhurst,* attorney], for the respondent.

CLARKE, P. J.:

The respondent was admitted to the bar in December, 1903. He is charged in the petition with converting to his own use the sum of $200 paid to him by one Julia F. Burke in connection with an action in the United States Circuit Court arising out of the death of her brother, one Thomas F. Burke, in 1909. Burke, while rowing on the East river, was killed in a collision with a carfloat owned by the New York, New Haven and Hartford Railroad Company, and Mary Burke, his mother, brought an action against the railroad company to recover damages for his death. The action was tried in June, 1911, and resulted in a verdict for the defendant. In September or October, 1911, one James Murphy, a friend of the deceased who had at times acted as a process server for the respondent, took Julia F. Burke and Mrs. Catherine C. Brennan, daughters of Mary Burke, to the respondent's office to consult with him with a view to taking an appeal from the judgment. On this occasion, or at the next following interview, the respondent was concededly retained to take an appeal from the judg-

ment or proceedings necessary to obtain a new trial of the action.

There is a sharp conflict as to the terms of the respondent's retainer, which was not in writing. According to the testimony of Miss Burke and Mrs. Brennan, the respondent agreed to prosecute the appeal upon the receipt of $300 to pay for the printing of the case on appeal, and upon a contingent fee of fifty per cent of the amount of the recovery against the railroad company if he were successful. The respondent, on the other hand, testified that he agreed to undertake an appeal in the case, or to get a new trial, for $300 to be paid in cash, with a contingent fee of fifty per cent of any such recovery. Disbursements for printing the record on appeal were to be made out of the said $300 and the balance was to be applied upon the respondent's contingent fee in the event of his success.

At the time of the first interview, when the terms of the retainer were discussed, the respondent had not yet seen a copy of the stenographer's minutes upon which the verdict was rendered. After hearing the respondent's proposal Miss Burke told him that she and Mrs. Brennan would think it over and see if they could get the necessary money, and if so, would return with a copy of the minutes and other necessary papers. About two weeks later Miss Burke, who had borrowed $200 from her sister, Mrs. Brennan, had a second interview with the respondent at his office at which there were no other witnesses present. Miss Burke testified that on this occasion she gave the respondent the said $200, stating that she had borrowed it, but not stating from whom. She told him that she would give him the remaining $100 as soon as the appeal book was printed, to which deferred payment the respondent assented. The respondent testified that Miss Burke stated that the $200 in question had been borrowed by her mother, the plaintiff in the action, and that the $100 would be paid to him in monthly installments.

At or about the time of this interview the respondent received a copy of the stenographer's minutes taken on the trial, which consisted of 114 typewritten pages. The respondent testified that he consulted on the case with one Martin A. Ryan, an attorney now dead, who was versed in maritime law,

and that their examination of the record disclosed no exceptions upon which an appeal could be based with any possibility of success.

It thus appears that as early as the spring of 1912 the respondent knew that no money would be required for the printing of the case on appeal, and that the only services which he might be called upon to perform would be in respect to the obtaining of a new trial on the ground of newly-discovered evidence. The case was never printed, nor was any motion made for a new trial upon the ground of newly-discovered evidence.

There were repeated requests for the return of the money. On the first occasion respondent asked that he be given another month on the case, saying that if this printing was not then done he would refund the money. The next time that "he would give us the money but to give him some more time." On another occasion "to come down to his office and he would give me the money." At the next interview "to come down to his office after the first of the year." Finally in the spring of 1915 an attorney was retained to collect, who had a conference with respondent, who said that he was going to settle the matter but would not do it then and thought he should be allowed something for his work on the case. He claimed fifty dollars as compensation and offered to give notes for the balance. He never offered cash or notes.

The learned referee has reported as follows: "The alleged wrongful act constituting the unprofessional conduct with which the respondent is charged is that he converted the money to his own use, instead of using it for the purpose for which it was given him.

"As early as the spring of 1912 upon an examination of the minutes of the trial the respondent knew or should have known that the record contained no grounds upon which he could hope to succeed on appeal and that no money would be needed for the printing of the appeal. I think he was justified in holding the case under consideration and making efforts to obtain new evidence as the basis for a motion; there is no testimony, however, tending to show that there was reason for much encouragement that evidence of the character needed would be forth-

First Department, April, 1917. [Vol. 177.

coming. The proper course for the respondent to have pursued in the circumstances would have been, after he had learned early in the year 1912 that there was no chance of appealing from the judgment, to have waited a reasonable time for the procuring of new evidence upon which to base a motion for a new trial, and upon the expiration of such reasonable time to have deducted from the $200 a proper amount for his professional services and to have returned the balance. In the circumstances, I am of the opinion that a reasonable time to wait for the procuring of new evidence should not exceed one year. The money was paid to him in the fall of 1911; he learned that an appeal could not be taken early in 1912, the plaintiff died in August, 1913, and demand was made upon him for return of the money in the fall of 1913, and continued demands were made upon him by Miss Burke and Mrs. Brennan from then until they placed the matter in the hands of Mr. O'Neill in the year 1915. Mr. O'Neill was unable to collect anything from the respondent, and, so far as appears, down to the present time he has failed to return the whole or any part of the $200.

" There is a dispute as to just what the respondent said to Mrs. Brennan and Miss Burke about the cost of printing. It seems clear, however, that these ladies were led to believe from the statements of the respondent that the sum of $300 was necessary for this purpose. Adopting the view most favorable to the respondent, for which there can be found any support in the testimony, it must be said that no substantial part of the $200 could become the property of the respondent until the case on appeal was printed or a motion for a new trial on the ground of newly-discovered evidence. Nevertheless, the respondent immediately upon the receipt of the $200 dealt with it as if it were his own."

We are of the opinion and find as a fact upon the preponderance of the evidence that the respondent received the $200 for the specific purpose of paying for the printing of the record on appeal and that he had no right to make use of it for any other purpose. Even on his own claim he never performed any substantial service, and there was no justification for his long delay in reaching a settlement, nor for his repeatedly broken

promises to make restitution. The refusal to pay back under the circumstances was equivalent to a conversion. We are satisfied, upon all the facts, that the respondent was guilty of gross misconduct in his profession. He used his client's money, intrusted to him for a specific purpose, as his own, without right. Such conduct cannot be condoned by this court.

The respondent must be disbarred.

SCOTT, SMITH, PAGE and DAVIS, JJ., concurred.

Respondent disbarred. Order to be settled on notice.